UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARRINGTON PERKINS,

        Plaintiff,

v.

CITY SHIELD SECURITY SERVICES,

        Defendant.

Case No. 23-cv-12384
Honorable Linda V. Parker

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 21)

On September 19, 2023, Plaintiff Arrington Perkins (hereafter "Plaintiff" or "Mr. Perkins") initiated this action against Defendant City Shield Security Services ("Defendant" or "CSSS"), alleging that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), by discriminating against Plaintiff and terminating his employment because of his race. (ECF No. 1 at PageID.1-2.) This matter is presently before the Court on Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) and has been fully briefed. (ECF Nos. 21, 22, 25.) Finding the facts and legal arguments adequately presented in the parties' filings, the Court is dispensing with oral argument pursuant to Eastern

District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court denies Defendant's Motion for Summary Judgment.

## I.     Factual Background

Plaintiff is a Black male.  (ECF No. 22 at PageID.315.)  Plaintiff was hired as a security guard by Defendant on August 16, 2022. [1] (*Id.*; ECF No. 7 at PageID.28, 30.)  Throughout the course of his employment, Plaintiff was a union member of the "International Union, Security, Police and Fire Professionals of America," and his employment relations with Defendant were governed by a collective bargaining agreement. (ECF No. 21-3 at PageID.202; ECF No. 21 at PageID.173; ECF No. 21-5.)

Defendant held a policy that sleeping on duty served as an employment offense or "job deficiency."  (ECF No. 22 at PageID.315; ECF No. 21-7 at PageID.263.)   Under Defendant's Disciplinary Actions Matrix ("Matrix"), employees were to receive a 40-hour suspension as a consequence of their first sleeping on duty offense.  (ECF No. 21-7 at PageID.263.)   Termination of employment was the consequence of a second sleeping on duty offense.  *Id.* However, it is written in the Matrix that "disciplinary actions are not automatic as each must be considered in light of any mitigating circumstances that may apply."

---

[1] Defendant stated that Plaintiff was hired on August 18, 2022, in its Motion Brief, but agreed in its Answer that Plaintiff was hired on August 16, 2022. (ECF No. 7 at PageID.28, 30; ECF No. 21 at PageID.171).

(ECF No. 21-7 at PageID.260.)  The Matrix also outlines the decision-makers for each disciplinary action:

> The Company President or his/her designee is the approval authority for all terminations. In addition, all terminations must be coordinated through the Human Resources Department. The Director of Operations is the approval authority for suspensions and any exceptions made to this procedure. Operations Managers are the approval authority for verbal counseling and letters of reprimand, and must ensure that their recommendation(s) for suspension and termination are forwarded to the appropriate approval authority. Operations Managers are responsible for investigating and providing accurate and complete documentation of all disciplinary actions. In certain instances, the Director of Operations may assign the investigation to other personnel. The Director of Operations is responsible for reviewing all disciplinary action documentation submitted by the Operations Manager to ensure the documents are complete, accurate and appropriate. *Id.*

Plaintiff worked long hours for Defendant.  (ECF No. 22 at PageID.315; ECF No. 21-8 at PageID.276.)  On February 15, 2023, Plaintiff fell asleep while on duty. (ECF No. 22 at PageID.315; ECF No. 23-3 at PageID.479.)  Due to this being his first offense, Plaintiff received a 40-hour suspension in accordance with Defendant's Matrix.  (ECF No. 21-7 at PageID.263; ECF No. 21-8 at PageID.278; ECF No. 22 at PageID.315.)  On March 5, 2023, Plaintiff fell asleep on duty for a second time. (ECF No. 21 at PageID.174; ECF No. 22 at PageID.315.)  Plaintiff was terminated from employment as a consequence of his second offense; his last day of work being March 9, 2023.  (ECF 21-8 at PageID.276; ECF No. 22 at PageID.315.)

**Herbert Kitter and Alleged Disparate Treatment**

3

Following his termination, Plaintiff learned that a white employee, Herbert Kitter, received several write ups for breaking Defendant's sleeping on duty policy. (ECF No. 1 at PageID.5; ECF No. 21-8 at PageID.275.)  Kitter served as another security guard for Defendant and occasionally worked during the same shift as Plaintiff.  (ECF No. 21-8 at PageID.276.)  Kitter received four sleeping on duty offenses during the course of his employment with Defendant.  (ECF No. 22 at Page ID.316; ECF No. 25 at Page ID.628, 631.)  The dates of the violations are as follows: December 1, 2022; December 28, 2022; February 8, 2023; and February 15, 2023. (ECF No. 21 at PageID.176; ECF No. 22 at PageID.316; ECF No. 25 at PageID.631; ECF 21-6 at PageID.257.)

Kitter was not terminated after receiving his second sleeping on duty violation on December 28. (ECF No. 21 at PageID.176; ECF No. 22 at PageID.316; ECF 21-6 at PageID.256.)  Defendant asserts that, under its Matrix, each employees' disciplinary "points" reset to zero on January 1 and July 1 of each year.  (ECF No. 21 at PageID.174; ECF No. 25 at PageID.629.)  Defendant argues that it did not terminate Kitter after his second December offense because: (1) his disciplinary points would have reset on January 1; (2) Defendant could not hold a disciplinary meeting with Kitter due to a lack of HR personnel and union representatives, and (3) Defendant established a policy that prevents an employee from being disciplined if a disciplinary meeting cannot be held before a reset date.  (ECF. No. 21 at

4

PageID.174, 176.) Plaintiff contests the existence of this policy because it is not documented in Defendant's records. (ECF No. 22 at PageID.317; ECF No. 21-6 at PageID.254.)

After the January 1 reset date, Kitter received a sleeping on duty offense on February 8, 2023. (ECF No. 25 at PageID.631.) He received a verbal warning for this offense instead of a 40-hour suspension. (ECF No. 21-7 at PageID.263; ECF No. 25-4 at PageID.653-54.) Defendant argues that Kitter received a verbal warning instead of suspension because "he was working a lot of hours." [2] (ECF No. 25 at PageID.631.) On February 15, 2023, Kitter fell asleep on duty for a second time. (ECF No. 22 at PageID.316; ECF No. 25 at PageID.631.) Kitter was not terminated as a result of his second offense; instead, he received a 40-hour suspension. (ECF No. 25 at PageID.631; ECF No. 25-4 at 654.)

On March 16, 2023, Plaintiff's union representative and Chief Union Steward, Rafael Bryant, submitted a grievance to Defendant regarding his perceptions of "blatant racism, discrimination, and unfair treatment[,]" as well as racially motivated inconsistencies in Defendant's disciplinary actions. (ECF No. 1 at PageID.6.)

---

[2] Defendant did not include this explanation in its Motion Brief and only raised it in its Reply. Arguments subsequently raised in a party's reply brief are waived and immaterial. *See Scottsdale Ins. Co. v. Flowers*, 513 F3d 546, 553 (6th Cir. 2008.)

5

In March of 2023, Defendant terminated Kitter. (ECF No. 1 at PageID.7; ECF No. 22 at PageID.318; ECF No. 25 at PageID.631.) The parties dispute the date and reason for which Kitter was ultimately terminated. *Id.* Defendant states that Kitter was terminated on March 7, 2023, for sexually harassing his supervisor. (ECF No. 25 at PageID.631.) Plaintiff states that Kitter was terminated on March 20, 2023, for his two February sleeping on duty offenses, four days after Bryant submitted his grievance. (ECF No. 1 at PageID.7; ECF No. 22 at PageID.318.)

In 2023, between late June and early July, Defendant rehired Kitter. (ECF No. 22 at PageID.319.) Defendant does not dispute that Kitter was ultimately reemployed by Defendant. (ECF No. 7 at PageID.36; ECF No. 22 at PageID.319.) Defendant's Director of Human Resources, Allison Keane, acknowledged that Kitter was rehired by Defendant, but could not confirm his reemployment date during her deposition. (ECF No. 25-4 at PageID.655.) Defendant suggests that former employees are eligible for rehire six months after termination. (ECF 21-8 at PageID.276; ECF No. 22 at PageID.319.) Plaintiff states that he was never told that he could reapply after termination and was never told he was eligible for rehire. *Id.* Plaintiff contests the existence of Defendant's rehiring policy, as it is not written. (ECF No. 22 at PageID.319.) Rafael Bryant, when asked about Defendant's alleged rehiring policy, stated that he had never heard of it. (ECF No. 23-2 at 372-373.)

I. **Procedural History**

6

On June 16, 2023, Plaintiff filed a charge of discrimination with the EEOC. (ECF No. 25-5 at PageID.658.) The EEOC issued a Notice of Right to Sue on June 21, 2023. (ECF No. 22 at PageID.319; ECF No. 24-1 at Page ID.623.) On September 19, 2023, Plaintiff filed his Complaint in the United States District Court for the Eastern District of Michigan. (ECF. No. 1.) Defendant filed its Answer on January 12, 2024. (ECF No. 7.) The Parties filed a joint discovery plan, and a scheduling order was signed and entered on February 8, 2024. (ECF No. 11; ECF No 12.) After discovery concluded, Plaintiff filed a motion to extend discovery, which was denied without prejudice. (ECF No. 18; ECF No. 26.) On September 13, 2024, Defendant filed the present Motion for Summary Judgment. (ECF No. 21.) Plaintiff's Response and Defendant's Reply were filed on October 4, 2024, and October 11, 2024, respectively. (ECF No. 22; ECF No. 25).

## II.     Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment

against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court only needs to consider the cited materials, but it may consider other materials in the record. *Id.* at 56(c)(3). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

### III. Applicable Law

Title VII "makes it an unlawful employment practice to discriminate against an individual based on their race[.]" *Daniels v. Bd. of Educ. of Ravenna City Sch. Dist.*, 805 F.2d 203, 206 (6th Cir. 1986) (citing 42 U.S.C. § 2000e-2(a). Under Title VII, it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1).

A Title VII claim can be established under the theory of disparate treatment. *Daniels*, 805 F.2d at 206. Disparate treatment occurs when an "employer simply treats some people less favorably than others because of their race[.]" *Id.* (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). In the Sixth Circuit, a racial discrimination claim brought under § 1981 is analyzed according to the standards set forth in Title VII. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000) ("The elements of [a] prima facie case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and §1981.")

A plaintiff may establish a Title VII claim through direct or circumstantial evidence of discrimination. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). When a plaintiff seeks to prove racial discrimination through circumstantial

9

evidence, courts apply the *McDonnell-Douglas* burden-shifting framework. *Univ. of Cincinnati*, 215 F.3d at 572; *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).

Under the *McDonnell-Douglas* framework, a plaintiff must first establish a prima facie case of racial discrimination. *Id.* A plaintiff satisfies this burden by demonstrating that: (1) they are a member of a protected class; (2) they were qualified for the position; (3) they suffered an adverse employment action; and (4) they were (a) replaced by a person outside of the protected class, or (b) treated less favorably than a similarly situated individual outside of the protected class. *Univ. of Cincinnati*, 215 F.3d at 572-73; *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). If a plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the defendant carries this burden, the plaintiff must then prove that the reasons proffered by the defendant were pretextual. *Id.* at 804.

## IV. Analysis

### 1. Direct vs. Circumstantial Evidence

Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012).

Circumstantial evidence "does not on its face establish discriminatory animus but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Id.* Because Plaintiff does not claim to have direct evidence and proceeds as if such evidence is lacking, Plaintiff's circumstantial evidence must be evaluated through the *McDonnell Douglas* burden-shifting framework. *See Id.* at 653; *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

### 2. Prima Facie Case of Racial Discrimination

The burden of establishing a prima facie case of disparate treatment "is not onerous." *Burdine, 450 U.S.* at 253. Defendant does not contest that Plaintiff can satisfy the first three prongs of the prima facie case analysis. (ECF No. 21 at PageID.181; ECF No. 22 at PageID.323.) The Court therefore focuses on whether Plaintiff has satisfied his burden of production as to the fourth element.

Plaintiff can satisfy the fourth element through two alternatives: (1) by demonstrating that he was replaced by a person outside of his protected class, or (2) by demonstrating that he was treated less favorably than a similarly situated individual outside of his protected class. *Mitchell*, 964 F.2d at 582.

### a. Replacement by a Nonmember of Plaintiff's Protected Class

Plaintiff asserts that a white male, Herbert Kitter, was rehired as a security guard after Plaintiff was terminated. (ECF No. 22 at PageID.319.) Defendant does not dispute that Kitter was reemployed but suggests that a policy exists that allows

11

for the rehiring of a former employee if the employee reapplies six months after termination. (ECF 21-8 at PageID.276; ECF No. 22 at PageID.319.) Defendant having this policy does not disturb the result of the analysis; the question for the Court is whether Plaintiff was replaced by a nonmember of his protected class, not questions as to how that nonmember was hired. While Plaintiff has challenged the existence of Defendant's verbal rehiring policy, the Court declines to address those arguments as they call for questions of credibility. The fact that Defendant replaced Plaintiff with a nonmember of Plaintiff's protective class is sufficient. Plaintiff can establish a prima facie case on this basis.

### b. Similarly Situated Employees

The bulk of Plaintiff's arguments, however, involve allegations that Plaintiff was treated less favorably than Herbert Kitter. As a result, Plaintiff could also satisfy the fourth element by demonstrating that Plaintiff and Kitter were similarly situated in all "relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352-53 (6th Cir. 1998). In the disciplinary context, relevant considerations include whether the employees dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell*, 964 F.2d at 583.

12

The record demonstrates that Plaintiff and Kitter were similarly situated in all relevant aspects.  First, there is no dispute that Plaintiff and Kitter were both required to observe and abide by Defendant's "sleeping on duty" workplace policy. (ECF No. 21 at PageID.175-176; ECF No. 22 at PageID.315-316; ECF No. 25 at PageID.631.)  Consequently, Plaintiff and Kitter were both subject to the same standard of conduct.  *See e.g., Barry v. Noble Metal Processing*, Inc., 276 F. App'x 477, 483 (6th Cir. 2008) (finding that the plaintiff and comparator were subject to the same standards because they were both governed by the same workplace violence policy.)

Second, it is undisputed that Plaintiff and Kitter engaged in the same exact conduct. (ECF No. 21 at PageID.175-76; ECF No. 22 at PageID.315-17; ECF No. 25 at PageID.631.)  Plaintiff and Kitter both violated Defendant's policy by falling asleep on duty, and they both offended this policy twice within a six-month period. *Id.*

Defendant argues that Plaintiff and Kitter's violations were handled by different decision-makers.[3]  (ECF 25 at PageID.632.)  However, the record suggests otherwise.  The first page of Defendant's Matrix states that "the Company President

---

[3] Defendant did not offer any details or evidence regarding the identities of the decisionmakers. (ECF No. 25 at PageID.632.)  In any event, the argument is waived as it was only raised in Defendant's Reply. *See Scottsdale Ins. Co.*, 513 F.3d at 553; *see also U.S. v. Hendrickson*, 822 F.3d 812, 829 n.10 (quoting *U.S. v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004)) (cleaned up). "A party may not raise an issue by 'mentioning it in the most skeletal way, leaving the court to put flesh on its bones.'"

13

or his/her designee is the approval authority for all terminations." (ECF No.21-7 at PageID.260.)  The Matrix also plainly states that "the Director of Operations is the approval authority for suspensions and any exceptions made to this procedure." *Id.* Given that Plaintiff and Kitter both faced suspension and termination for sleeping on duty, it follows that the Director of Operations would be the decision-maker in regard to their suspensions, and that the Company President, or their designee, would be the ultimate decision-maker for their termination.

The Court finds that this evidence is sufficient to demonstrate that Plaintiff and Kitter were similarly situated employees. Plaintiff has met his burden of establishing a prima facie case.

### 3. Legitimate, Nondiscriminatory Reason

Because Plaintiff has met his prima facie burden, the Court will now consider Defendant's argument that it possessed a legitimate nondiscriminatory reason for terminating him. *McDonnell Douglas Corp.*, 411 U.S. at 802.  Defendant asserts that Plaintiff's termination was due to his receiving two "sleeping on duty" violations, which is in accordance with Defendant's Matrix.  (ECF No. 21 at PageID.173-75; ECF No. 21-7 at PageID.263.)  Plaintiff does not dispute that he violated the policy twice, and the final violation was evidenced by video footage. (ECF No. 22 at PageID.315; ECF No. 21-8 at PageID.277; ECF No. 21-9 at PageID.282.)  Plaintiff's second violation of Defendant's sleeping on duty policy

14

serves as a legitimate and nondiscriminatory reason for Plaintiff's termination. *See Harper v. city of Cleveland*, 781 Fed.appx 389, 397 (6th Cir. 2019) (holding that falling asleep on duty and other forms of employee misconduct serve as legitimate reasons for an adverse-employment action.); *see also Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558 (6th Cir.2009) (noting that purportedly violating a company's code of conduct is a facially legitimate, nondiscriminatory reason for termination). Therefore, Defendant articulated a legitimate non-discriminatory reason for Plaintiff's termination, which shifts the burden back to Plaintiff.

4. **Pretext**

In order to withstand summary judgment, Plaintiff must now show that Defendant's proffered reason for terminating him was pretextual. To do so, Plaintiff must produce sufficient evidence from which a jury could reasonably reject Defendant's explanation for Plaintiff's termination." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). "This burden is not heavy" because "summary judgment is warranted only if no reasonable juror could conclude that the employer's offered reason was pretextual." *Strickland v. City of Detroit*, 995 F.3d 495, 512 (quoting *George v. Youngstown State Univ.*, 966 F.3d 446, 462 (6th Cir. 2020)).

In deciding on a motion for summary judgment, the Court need only "consider the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Importantly, "the evidence and inferences that properly can be drawn

from the evidence presented during the plaintiff's prima facie case may be considered in determining whether the defendant's explanation is pretextual." *Ondricko*, 689 F.3d at 654 (quoting *Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 695 (1997)). A plaintiff can establish pretext by showing that the defendant's proffered reason for termination (1) had no basis in fact; (2) did not *actually* motivate the plaintiff's discharge; or (3) was *insufficient* to motivate discharge. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *rev'd on other grounds*, *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009).

Here, Plaintiff has not argued that Defendant's reason lacks factual basis, nor has Plaintiff suggested that his termination was not *actually* motivated by his two sleeping on duty violations. In fact, Plaintiff admitted to sleeping on duty on two occasions, and stated that he was terminated for twice violating Defendant's policy. (ECF No. 22 at PageID.315; ECF 21-8 at PageID.274, 277). As a result, Plaintiff's first two paths to establish pretext are foreclosed.

However, as the Court considers the record and the evidence used to support Plaintiff's prima facie case, it finds that a reasonable jury could conclude that Plaintiff can demonstrate pretext through the third path set forth in *Dews*. This option is "easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer

16

contends motivated its discharge of the plaintiff." *Manzer*, 29 F.3d at 1084; *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012). As the Supreme Court has stated, "especially relevant to such a showing [of pretext] would be evidence that white employees involved in acts [. . .] of comparable seriousness [. . .] were nevertheless retained or rehired." *McDonnel Douglas Corp.*, 411 U.S. at 804.

Evaluating pretext in the third category largely mirrors the method in which courts evaluate the fourth element of a prima facie discrimination claim. *See Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 780 (6th Cir. 2016) ("Where an employer argues that the plaintiff's differential discipline was justified by material differences in context, we evaluate whether that justification is pretextual by looking to the same or similar factors as when evaluating the "similarly situated" element of the prima facie case.); *see also Kroger Co.,* 319 F.3d at 867 (using the *Mitchell* and *Ercegovich* "similarly situated" analysis to evaluate pretext.)

The Sixth Circuit has held that a plaintiff need not demonstrate "an exact correlation" to another employee receiving favorable treatment to show pretext, but the two must be similar in all of the "relevant aspects." *Ercegovich ,*154 F.3d at 352-53. At the pretext stage, however, "the factual inquiry proceeds to a new level of specificity" and courts conduct a more rigorous comparison between the difference

17

in conduct between a plaintiff and their comparator. *Jackson*, 814 F.3d at 780 (quoting *Burdine*, 450 U.S. at 255).

Here, when examining the Plaintiff's comparison to Kitter with a stronger lens, the result from the earlier prima facie case analysis still holds.[4] The record shows that Plaintiff and Kitter are similarly situated. Both employees worked as security guards for Defendant, both employees were required to follow Defendant's well established policy that prohibited sleeping on duty, both employees fell asleep on duty twice within a six month period (although Kitter violated the policy twice in two separate six-month periods), both employees should have been terminated for their second offense, and both employees would have been disciplined via the same channels, per Defendant's policy. Accordingly, the record evidence raises fact issues as to whether Plaintiff, who was similarly situated to Kitter, was disciplined differently than Kitter while engaging in the same conduct.

As mentioned by the Sixth Circuit in *Moore v. Coca-Cola Bottling Co. Consol.*, "[a] two-strikes policy for firing Black employees and a three-strikes policy

---

[4] While Defendant suggests that most of its workforce is Black, and that there are Black security guards who have not been terminated after receiving two sleeping on duty offenses, this information ignores the fact that the similarly situated analysis calls for a comparison of Plaintiff to a *nonmember* of his protected class. (ECF No. 21 at PageID.174; 180, 21-12 Page. ID 306-11.) Moreover, Defendant has not provided any case law to support its position that, by having several employees who are members of Plaintiff's protected class and demonstrating that some of those employees are not disciplined like Plaintiff, Defendant can refute a showing of pretext. Disparate treatment calls for a comparison of a plaintiff to a nonmember of his protected class, which has been demonstrated.

for firing white employees would plainly constitute disparate treatment and raise pretext concerns." *Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 625 (6th Cir. 2024).  In December, Kitter received two violations for sleeping on the job and was not terminated.  (ECF No. 21 at PageID.176.)  In February, Kitter received a verbal warning for his first offense and a 40-hour suspension for his second.  (ECF No. 25 at PageID.631; ECF No. 25-4 at PageID.653-54.)  In contrast, Plaintiff received a 40-hour suspension for his first sleeping on the job offense and was terminated for his second violation.  (ECF No. 21 at PageID.174; ECF No. 22 at PageID.315.)

Interestingly, the parties dispute whether Kitter's eventual termination was due to his sleeping infractions at all.  (ECF No. 1 at PageID.7; ECF No. 22 at PageID.318; ECF No. 25 at PageID.631.)  Plaintiff suggests that Kitter was terminated on March 20, 2023, for his sleeping offenses after Rafael Bryant raised concerns of disparate treatment.  Defendant states that Kitter was terminated on March 7, 2023, for sexually harassing his supervisor, which is an automatic termination offense.  In any event, Defendant cannot negate Plaintiff's allegations of disparate treatment by alleging that Kitter was *eventually* terminated from employment.  *See Moore*, 113 F.4th at 625 (noting that it is a "misunderstanding of the law" to suggest that a plaintiff cannot show pretext simply because their comparator was eventually terminated.)

19

Therefore, when considering the facts in the light most favorable to Plaintiff, a jury could reasonably conclude that Kitter was treated more favorably than Plaintiff for the same conduct. Summary judgement is not appropriate.

## V. Conclusion

Because the record presents a genuine dispute of material fact at the pretext stage of the *McDonell Douglas* burden-shifting framework, Defendants are not entitled to summary judgment. Plaintiff's disparate treatment claim must proceed to trial.

**SO ORDERED.**

                                                    s/ Linda V. Parker
                                                    LINDA V. PARKER
                                                    U.S. DISTRICT JUDGE

Dated: September 30, 2025